IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GRANT MEDLIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:19-cv-00913 |
| | ) |
| STEVE BROWN, | ) **JURY TRIAL DEMANDED** |
| | ) |
| Serve: | ) |
| 12525 Montalcino Circle | ) |
| Windemere, FL  34786 | ) |
| | ) |
| GREG CRIDER, | ) |
| | ) |
| Serve: | ) |
| 638 Mutton Hollow Hill Road | ) |
| Bethpage, TN  37022-8537 | ) |
| | ) |
| NEW GENESIS OF TENNESSEE, LLC, | ) |
| | ) |
| Serve: | ) |
| New Genesis of Tennessee, LLC | ) |
| Attn:  Greg Crider (registered agent) | ) |
| 638 Mutton Hollow Hill Rd | ) |
| Bethpage, TN  37022-8537 | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff Grant Medlin, by and through his attorneys, for his Complaint against Defendants Steve Brown, Greg Crider, and New Genesis of Tennessee, LLC (sometimes collectively referred to as the "Defendants"), states:

### PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Grant Medlin ("Plaintiff" or "Mr. Medlin") is a citizen and resident of Missouri.

2. Defendant Steve Brown ("Brown") is a citizen and resident of Florida.

2324457

3. Defendant Greg Crider ("Crider") is a citizen and resident of Tennessee.

4. Defendant New Genesis of Tennessee, LLC d/b/a New Genesis Power Products ("New Genesis") is a Tennessee limited liability company with its principal place of business located in Florida.

5. New Genesis currently has four (4) members: (1) Steve Brown, a citizen and resident of Florida, (2) Greg Crider, a citizen and resident of Tennessee, (3) Grant Medlin, a citizen and resident of Missouri, and (4) Matt Macon, a citizen and resident of Tennessee.

6. Because its members are citizens of Florida, Missouri, and Tennessee, New Genesis is a citizen of each of these states.

7. This action involves federal and Missouri securities law claims and state common law claims for fraud, negligent misrepresentation/omission, civil conspiracy, and unjust enrichment based on false and misleading statements which induced Plaintiff to pay $1 million for a fraudulent investment.

8. This Court has jurisdiction under 28 U.S.C. § 1331 because this civil action arises under the laws of the United States in that federal securities claims are being asserted under Section 10(b) of the Securities Exchange Act of 1934 and Sections 5 and 12 of the Securities Act of 1933 and their corresponding regulations.

9. This Court has supplemental jurisdiction over Plaintiff's state statutory and common law claims under 28 U.S.C. § 1367(a) because the state common law claims are so related to the federal securities law claims that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

11. Venue is also proper in this Court under 15 U.S.C. § 77v(a) because this is the district where the offer or sale of securities took place.

12. As set forth more fully below, this Court has personal jurisdiction over Defendants under both the Missouri long-arm statute and under the U.S. Constitution because, among other reasons:

    a. Defendants have solicited investments from a Missouri investor, Plaintiff Grant Medlin;

    b. Defendants specifically made an offer and sale of securities to Plaintiff in this case in which they directed securities offerings to Plaintiff in Crawford County, Missouri by email or other wires;

    c. Defendants, as set forth more fully below, directed misrepresentations and other tortious conduct to Plaintiff in Crawford County, Missouri while knowing, or having good reason to know, that such conduct would be felt by Plaintiff in Missouri; and

    d. Defendants directed electronic communications to Plaintiff in Missouri with the intent to induce Plaintiff to take action within the State.

## GENERAL ALLEGATIONS

13. Defendant New Genesis is a Tennessee company with its principle office in Orlando, Florida.  *See* http://newgenesispowerproducts.com/photo-gallery/ (last visited April 3, 2019).

14. New Genesis and its principals, Steve Brown and Greg Crider, claim that New Genesis developed and owns a proprietary Mag-Drive system that, in conjunction with solar panels

(minimal #) and batteries for power storage, is operational and saves 80% or more in energy costs in commercial application.

15. A magnetic drive pump, or system, uses a balanced magnetic field to create energy. Unlike a traditional centrifugal pump which has a direct drive connection between impeller and motor, a mag-drive pump eliminates the direct drive mechanism and replaces it with a magnetic field.

16. New Genesis claims to have developed a first of its kind, proprietary Mag-Drive system that can be used to power businesses to all but eliminate traditional electrical energy sources, saving commercial users 80% or more in electricity costs.

17. New Genesis' website touts the details and existence of its purported Mag-Drive system (which it calls the "The New Genesis Compact Solar PV Mag-Drive System") as functional and operational, stating that "[t]he New Genesis Compact Solar PV Mag-Drive system is custom designed to fit your power usage needs."  http://newgenesispowerproducts.com/products/  (last visited April 6, 2019)

18. New Genesis' website touts the tremendous benefits and features of the purported Mag-Drive system, including the following:

> You remain tied to the energy grid, while you produce enough of your own energy to basically avoid ever needing to use utility-supplied power again.  Your 'grid-tied' system will feature transfer switching components to allow you to utilize 12, 24 or 48VDC charge components with AC inverters appropriate to support the declared output value.  Enjoy producing your own utility-free power, while remaining safely connected to the power grid to support and back-up your system's output.

- Standard power supply designed to accommodate 8-hour full capacity off take
- Needed recharge time can be accommodated based on the Mag-Drive charging circuit output required to maintain the system's typical or "normal" use cycle.
- The system has an automatic output AC interruption alarm to detect the low voltage threshold at 11VDC which switches the system from power output to the full-time charging cycle until the low voltage condition is corrected and ready to supply power during the pre-programmed designed time frame.

4

- A maximum threshold of 45% discharge of battery storage has been set in order to minimize charge requirements and extend battery life on all deep cycle batteries used.

http://newgenesispowerproducts.com/products/  (last visited April 6, 2019)

19. New Genesis' website also provides a diagram showing how its purported Mag-Drive system supposedly operates:



http://newgenesispowerproducts.com/products/  (last visited April 6, 2019)

20. New Genesis further claims on its website that its system supplies businesses "with affordable, proprietary electric generation and power storage units to let you control your energy future."  http://newgenesispowerproducts.com/about-us/ (last visited April 6, 2019).

21. New Genesis also claims that it offers "technically advanced products with proprietary technology has positioned New Genesis Products as the primary power provider for our customers, providing clean, reliable, low cost electric power to small, medium and large sized businesses." http://newgenesispowerproducts.com/about-us/ (last visited April 6, 2019).

5

22. New Genesis also touts the existence of its many customers. New Genesis states that it "engages in small to large Power Provider Agreements (PPA's), making our *company the Independent Power Provider (IPP) for apartment complexes, strip malls and every manner of multi-use and multi-unit business*. Simply stated, we sell power products that will empower the American family and the World." http://newgenesispowerproducts.com/about-us/ (last visited April 6, 2019) (emphasis added).

23. All of the claims set forth above, or similar claims, were found on New Genesis' website back in 2017.

24. Mr. Medlin was introduced to Steve Brown, a principal and owner of New Genesis, in early 2017 through a common, trusted friend of Mr. Medlin from Joplin, Missouri.

25. Mr. Brown contacted Mr. Medlin in Missouri to solicit his investment in the company.

26. Mr. Brown invited Mr. Medlin to Florida to see New Genesis' claimed proprietary Mag-Drive system.

27. Mr. Medlin traveled to Florida in May 2017 and visited Mr. Brown at his residence in Orlando, Florida where Mr. Brown claimed was the location of one of the Mag-Drive systems developed by New Genesis.

28. At that meeting in May 2017, Mr. Brown represented to Mr. Medlin that New Genesis had developed and owned its proprietary Mag-Drive system that, in conjunction with solar panels (minimal #) and batteries for power storage, was operational and would save 80% or more in energy costs in commercial application.

29. Mr. Brown represented to Mr. Medlin that the Mag-Drive system consisted of 2 DC inputs, a PV Solar, and the Mag-Drive.

30. Mr. Brown stated that the need for local utility supplies, such as electricity, were greatly diminished in this system because the Mag-Drive, in conjunction with the minimal solar panels, charged batteries that then delivered the power.

31. Mr. Brown showed Mr. Medlin a power system in his garage (pictures of which are also on New Genesis' website), which he claimed was the Mag-Drive system developed and owned by New Genesis.

32. Mr. Brown told Mr. Medlin that the power system in his garage was powered by the Mag-Drive.

33. Mr. Brown represented to Mr. Medlin that the magnetic fields in the Mag-Drive system were the primary energy source for the system, which allowed it to power businesses at 80% of the cost of traditional, electrical sources.

34. Mr. Brown represented to Mr. Medlin that the Mag-Drive system in his garage was operational and resulted in substantial energy savings.

35. Mr. Brown represented to Mr. Medlin that the Mag-Drive system required no further development or design, although they were always working on improving it.

36. Rather, according to Mr. Brown, New Genesis and its principals (Mr. Brown and Mr. Crider) needed additional capital merely to market the system and to scale it up in production.

37. Mr. Brown also presented Mr. Medlin with customer proposals that Mr. Brown claimed New Genesis was using to sell its Mag-Drive system to restaurants, hotels, and other businesses.

38. Mr. Brown told Mr. Medlin that New Genesis needed $1 Million in capital to launch further marketing and production efforts of the Mag-Drive.

39. The power system in Mr. Brown's garage that he claimed was the Mag-Drive system is attached hereto as <u>Exhibit A</u>, which includes a blue "box" that Mr. Brown represented to Mr. Medlin was the proprietary Mag-Drive developed and owned by New Genesis. In fact, contrary to the statements of Mr. Brown, that blue "box" does not contain, and has never contained, any type of Mag-Drive.

40. Mr. Brown and New Genesis subsequently directed emails and other communications to Mr. Medlin in Missouri to solicit his investment in New Genesis.

41. Mr. Brown also worked with Mr. Crider and potentially others at New Genesis to solicit the investment from Mr. Medlin under false pretenses.

42. In reliance on the representations set forth above, and the claims in the various materials provided to Mr. Medlin, including New Genesis' website set forth above, Mr. Medlin invested $1 million in New Genesis for 5% of the company.

43. All of the above representations and statements were false.

44. The Mag-Drive does not exist, has never existed, and is not operational or, if it exists, only a non-proprietary version may exist that only contributes a very small contribution to the commercial system or energy savings.

45. Nor does New Genesis have any type of proprietary system that saves customers substantial money, or any money, to power their businesses. Upon information and belief, New Genesis has no customers and no revenue.

46. Both Mr. Brown and Mr. Crider worked together, in concert, to conceal the truth about the Mag-Drive from Mr. Medlin in order to induce Mr. Medlin to invest $1 million in the company under false pretenses.

# COUNT I

### Violation of § 5 / § 12(1) of the Securities Act of 1933
[15 U.S.C. § 77e / 15 U.S.C. § 77l(a)(1)]
and
### Violation of the Missouri Uniform Securities Act
### (or other applicable State Securities Laws)
[Mo. Rev. Stat. § 409.3-301 / Mo. Rev. Stat. § 409.5-509]
**(Against all Defendants)**

47. Plaintiff realleges all of the above paragraphs, which are incorporated by reference as if fully set forth herein.

48. On or about May and June 2017, Mr. Brown, acting on behalf of all the Defendants, offered Plaintiff the opportunity to purchase a 5% investment interest in New Genesis for $1 million.

49. Plaintiff purchased a 5% ownership interest in New Genesis for $1 million on or about June 2017.

50. Plaintiff had a reasonable expectation of profit from his investment in the company based on the representations set forth above.

51. The profits of New Genesis and Plaintiff's investment in New Genesis were to be derived primarily, if not solely from, the entrepreneurial or managerial efforts of others, as neither Plaintiff nor his agents have played any role, directly or indirectly, in New Genesis' management, business dealings, or affairs.

52. Plaintiff's investment in New Genesis, therefore, constitutes a security within the meaning of 15 U.S.C. § 77b and/or other applicable federal and state law in that it is (1) an investment, (2) in a common venture, (3) with a reasonable expectation of profits, and (4) with profits to be derived primarily, if not solely, from the entrepreneurial or managerial efforts of others.

53. There was no federal or state registration statement in effect at the time that Plaintiff was offered the opportunity to purchase securities in New Genesis.

54. There was no federal or state registration statement in effect at the time that Plaintiff purchased securities in New Genesis.

55. New Genesis' securities offering to Plaintiff was not exempt from registration under federal or state law.

56. The mails and/or facilities of interstate commerce were used in connection with New Genesis' sale or offer of the securities to Plaintiff because, among other reasons, (1) Plaintiff delivered $1 million for the purpose of purchasing the securities in New Genesis through the U.S. mails or wires, and (2) Defendants used the mails and/or interstate wires to communicate with Plaintiff and to send Plaintiff documents relating to the securities sale and offering, including investment solicitation materials.

57. Privity existed between the purchaser of the New Genesis securities (Plaintiff) and the seller (Mr. Brown on behalf of the Defendants) at the time of the offer and sale.

58. On or about April 6, 2019 and at other times, shortly after discovering Defendants' fraud and that the shares were unregistered, Plaintiff offered to tender back the securities purchased in exchange for return of his investment. Defendants did not respond or otherwise declined Plaintiff's offer.

59. For these reasons, Defendants offered and sold unregistered securities in violation of, among others, Section 5 of the Securities Act of 1933 [15 U.S.C. § 77e] and Mo. Rev. Stat. § 409.3-301, as well as other state laws.

60. As a direct and proximate result of Defendants' violation of these federal and state laws, Plaintiff has suffered harm and damages.

61. As such, Defendants are strictly liable to Plaintiff for rescission and related damages. Specifically, Plaintiff is entitled to recover from Defendants all consideration paid by Plaintiff for the securities of New Genesis, plus interest pursuant to Section 12(1) of the Securities Act of 1933 [15 U.S.C. § 77l(a)(1)] and Mo. Rev. Stat. § 409.5-509(b). Plaintiff is specifically and additionally entitled to an award of reasonable attorneys' fees under Mo. Rev. Stat. § 409.5-509(b)(1)-(3) and/or other applicable law.

WHEREFORE, Plaintiff prays that the Court enter judgment in favor of Plaintiff and against Defendants on Count I and enter an order rescinding Plaintiff's $1 million investment purchase of New Genesis' securities, requiring Defendants to immediately return Plaintiff's investment amount of $1 million, awarding interest as provided under 15 U.S.C. § 77l, Mo. Rev. Stat. § 409.5-509(b) and other applicable law, awarding costs and attorneys' fees pursuant to Mo. Rev. Stat. § 409.5-509(b) and other applicable law, and for any such additional relief this Court deems just and proper.

### COUNT II
**Violation of § 10(b) of the Securities Exchange Act of 1934**
[15 U.S.C. § 78j(b) / 17 C.F.R. § 240.10b-5]
and
**Violation of the Missouri Uniform Securities Act
(or other applicable State Securities Laws)**
[Mo. Rev. Stat. § 409.5-501 / Mo. Rev. Stat. § 409.5-509]
**(Against All Defendants)**

62. Plaintiff realleges all of the above paragraphs, which are incorporated by reference as if fully set forth herein.

63. As set forth above, Mr. Brown, acting on behalf of and in concert with the other Defendants, offered and sold securities to Plaintiff on or about May and June 2017, which communications were directed to Missouri.

64. As set forth above, the mails and/or facilities of interstate commerce were used in connection with the sale or offer of the securities to Plaintiff as set forth above.

65. Mr. Brown, acting on behalf of and in concert with the other Defendants, made false representations to Mr. Medlin, as set forth above, in order to induce Mr. Medlin to purchase securities in New Genesis.

66. As detailed above and incorporated herein, Mr. Brown, acting on behalf of and in concert with the other Defendants, represented to Mr. Medlin in May 2017 that, among other things:

   a. New Genesis had developed and owned its proprietary Mag-Drive system that, in conjunction with solar panels (minimal #) and batteries for power storage, was operational and would save 80% or more in energy costs in commercial application;

   b. The Mag-Drive greatly diminished the need for local utility supplies, such as electricity, system because the Mag-Drive, in conjunction with the minimal solar panels, charged batteries that then delivered the power otherwise provided by electricity;

   c. The magnetic fields in the Mag-Drive system were the primary energy source for the system which allowed it to power businesses at 80% of the cost of traditional, electrical sources;

   d. The Mag-Drive system in his garage was operational and resulted in substantial energy savings;

   e. The Mag-Drive system was fully operational and required no further development, or design;

12

  f. New Genesis and its principals (Mr. Brown and Mr. Crider) needed additional capital merely to market the Mag-Drive system and to scale the Mag-Drive up in production; and

  g. New Genesis was in negotiations with various customers about using the Mag-Drive system at various restaurants, hotels, and other businesses.

67. Mr. Brown also represented to Mr. Medlin that the Mag-Drive was in operational use at his own home and resulted in substantial energy savings.

68. Mr. Brown, acting on behalf of and in concert with the other Defendants, subsequently directed emails and other communications to Mr. Medlin in Missouri to solicit his investment in New Genesis.

69. All of the above representations were false, as the proprietary Mag-Drive, which saves 80% or more on energy costs, does not exist and was not developed by New Genesis.

70. Nor does New Genesis have any type of proprietary system that saves customers substantial money, or any money, to power their businesses.

71. New Genesis has no customers and no revenue; it is a shell company.

72. Defendants concealed from Mr. Medlin from the very beginning and for almost two (2) years that the proprietary Mag-Drive (which saves 80% or more on energy costs) does not exist and is not operational.

73. All of the foregoing false representations and omissions of material fact were made by Defendants to Mr. Medlin either intentionally or, at the very least, recklessly or in conscious disregard for the truth to induce Mr. Medlin to purchase securities in New Genesis.

74. All of the foregoing false representations and omissions of material fact were made by Defendants to Mr. Medlin in connection with the purchase or sale of securities.

75. Mr. Medlin relied on the foregoing false representations and omissions of material fact by purchasing $1 million in securities in New Genesis.

76. Mr. Medlin's reliance on Defendants' false representations and omissions of material fact was the proximate cause of Mr. Medlin's damages including, but not limited to, $1 Million based on the purchase price paid to Mr. Brown on behalf of the Defendants, plus lost interest and attorney's fees.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor on Count II and against Defendants, order return of Plaintiff's consideration paid for the securities and/or otherwise award damages adequate to compensate him for losses suffered due to Defendants' violation of the Securities Exchange Act of 1934 and Missouri anti-fraud securities laws or similar state laws, award interest and reasonable attorneys' fees under Mo. Rev. Stat. § 409.5-509(b)(1)-(3) and/or other applicable law, and award any such additional relief this Court deems just and proper.

## COUNT III

### Common Law Fraud

### (Against All Defendants)

77. Plaintiff realleges all of the above paragraphs, which are incorporated by reference as if fully set forth herein.

78. As detailed above and incorporated herein, Mr. Brown, acting on behalf of and in concert with the other Defendants, made a number of material misrepresentations, misleading statements, and omissions of material fact relating to New Genesis.

79. As detailed above and incorporated herein, these misrepresentations and omissions were material because they were viewed to be important by Plaintiff, as a reasonable investor, in making its decision to invest in New Genesis.

80. As detailed above and incorporated herein, Defendants had knowledge of the falsity of its material statements and omissions at the time they were made.

81. Defendants made these material misstatements and omissions with the intent to induce Plaintiff to make investments in New Genesis.

82. As detailed above and incorporated herein, Plaintiff was not aware of the falsity and misleading nature of Defendants' statements and omissions at the time they were made in May and June of 2017.

83. As detailed above and incorporated herein, Plaintiff reasonably and justifiably relied on the material misrepresentations and omissions to his detriment in making his investment in New Genesis.

84. Plaintiff had the right to rely upon these material misrepresentations and omissions in part because they were made and delivered by one of the controlling principals of New Genesis, Mr. Brown.

85. As a direct and proximate result of Defendants' fraudulent and misleading statements and omissions of material fact, Plaintiff suffered economic losses by paying $1 million for a fraudulent investment as well as lost interest and other damages.

86. Defendants' conduct in making the fraudulent misrepresentations and omissions to the Plaintiff was done in conscious disregard for the rights of Plaintiff and done so outrageously, willfully and wantonly entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in its favor and against Defendants, jointly and severally, on Count III and award damages adequate to compensate Plaintiff for losses suffered due to Defendants' fraud, for an award of punitive damages in an amount sufficient to punish Defendants for their behavior and to deter them and others from

engaging in such conduct in the future, for interest under applicable law, for Plaintiff's costs and attorneys' fees in pursuing this action, and for any such additional relief this Court deems just and proper.

## COUNT IV
### Negligent Misrepresentation/Omission
### (Against all Defendants)

87. Plaintiff realleges all of the above paragraphs, which are incorporated by reference as if fully set forth herein.

88. As detailed above and incorporated herein, Mr. Brown, acting on behalf of and in concert with the other Defendants, supplied information to Plaintiff in the course of business to solicit investment funds from Plaintiff.

89. As a result of Defendants' failure to exercise reasonable care, the information supplied by Defendants, as set forth above, was false.

90. As a result of Defendants' failure to exercise reasonable care, Defendants withheld material information about the existence and operation of the Mag-Drive, and the other facts withheld as set forth above.

91. The information was negligently provided by Defendants to Plaintiff, or negligently omitted from Plaintiff, for the guidance of Plaintiff in order to solicit investment funds from Plaintiff.

92. Plaintiff justifiably relied on the information provided by Defendants and the facts and information withheld.

93. Due to Plaintiff's reliance on the information and the omissions, Plaintiff suffered a pecuniary loss by purchasing an investment in New Genesis that was premised on false

information, most notably that the Mag-Drive was developed and owned by New Genesis, was fully operational, and saved customers substantial amounts (up to 80% or more) on their energy bills.

94. Defendants' conduct in making the negligent misrepresentations and omissions to the Plaintiff was done in conscious disregard for the rights of Plaintiff and done so outrageously, willfully and wantonly entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, jointly and severally, on Count IV and award damages adequate to compensate him for losses suffered due to Defendants' negligent misrepresentations and omissions, for an award of punitive damages in an amount sufficient to punish Defendants for their behavior and to deter them and others from engaging in such conduct in the future, for interest under applicable law, for Plaintiff's costs and attorneys' fees in pursuing this action, and for any such additional relief this Court deems just and proper.

## COUNT V

### Civil Conspiracy

### (Against All Defendants)

95. Plaintiff realleges the above paragraphs, which are incorporated by reference as if fully set forth herein.

96. Upon information and belief, prior to the offer and sale of the New Genesis investment to Plaintiff, New Genesis, Mr. Brown, and Mr. Crider entered into an agreement for the purpose of defrauding Plaintiff.

97. Specifically, upon information and belief, the Defendants collectively agreed to obtain Plaintiff's funds under false pretenses by misrepresenting to Plaintiff, among others, that

17

New Genesis had developed a proprietary Mag-Drive that allowed consumers to save substantial money on their energy costs.

98. In furtherance of the conspiracy, representatives of New Genesis, including Mr. Brown, directed communications to Mr. Medlin in Missouri for the purpose of soliciting funds from Plaintiff.

99. As set forth above and in furtherance of the conspiracy, Mr. Brown, on behalf of and in concert with the other Defendants, engaged in various tortious conduct toward Plaintiff, including securities fraud and fraud.

100. As a direct and proximate result of the conspiracy, Plaintiff suffered damages by paying for a fraudulent investment.

101. Defendants' acts were taken in conscious disregard for the rights of Plaintiff and done so outrageously, willfully and wantonly entitling Plaintiff to punitive damages.

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants on Count V and award damages adequate to compensate him for losses suffered due to Defendants' conspiracy, for an award of punitive damages in an amount sufficient to punish Defendants for their behavior and to deter them and others from engaging in such conduct in the future, for interest under applicable law, for Plaintiff's costs and attorneys' fees in pursuing this action, and for any such additional relief this Court deems just and proper.

## COUNT VI
### Unjust Enrichment

102. Plaintiff realleges the above paragraphs, which are incorporated by reference as if fully set forth herein.

103. Plaintiff provided a benefit to Defendants by paying $1 million for a fraudulent investment.

104. Defendants knowingly, voluntarily, and unfairly accepted the value and benefits provided by Plaintiff.

105. Defendants were enriched by the payment made by Plaintiff.

106. As set forth above, Defendants engaged in fraud and other tortious conduct to induce Plaintiff to pay $1 million for the equity interest in New Genesis under false pretenses.

107. It is fundamentally unfair, inequitable, and against good conscience for Defendants to be allowed to retain the funds paid by Plaintiff for the fraudulent investment.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants on Count VI and disgorge Defendants of the $ 1 million in funds they have unjustly retained at the expense of Plaintiff, for attorneys' fees, for costs and interest pursuant to applicable law, and for any such additional relief this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims for which he has such a right.

Dated:  April 15, 2019                                     Respectfully submitted,

**LEWIS RICE LLC**

By: */s/ Derick C. Albers*
Derick C. Albers, MO # 60966
600 Washington Ave., Ste. 2500
St. Louis, MO 63101
(314) 444-7649 (telephone)
(314) 612-7649 (facsimile)
dalbers@lewisrice.com

*Attorneys for Plaintiff Grant Medlin*